IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH META PLATFORMS, INC. USER ID 61554399878531 THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. 1:24-mj-482<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Thomas Kinney, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain user ID that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), and Rule 41, Federal Rules of Criminal Procedure, to require Meta Platforms, Inc. to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. I am a Deputy U.S. Marshal (DUSM) with the United States Marshal Service (USMS) and have been since 2023. During my law enforcement career, I have participated in numerous investigations involving fugitives from justice who have active arrest warrants in violation of federal and state laws. In the course of my duties, I have conducted or participated

in physical and electronic surveillance, the service of court orders, interviews of witnesses, and analyses of records kept by or relating to fugitive investigations.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Cole Allen Schnee is a person to be arrested based on a warrant issued in the United States District Court for the District of North Dakota alleging Violations of Supervised Release.  There is also probable cause to search the information described in Attachment A for evidence of these crimes/violations, as described in Attachment B.

## PROBABLE CAUSE

5. On June 5th, 2024, a federal arrest warrant was issued for Cole Allen Schnee alleging Violations of Supervised Release.

6. Schnee's whereabouts are currently unknown.  It is believed that Schnee is using his Meta Platforms, Inc. account to communicate with relatives, friends and/or associates. Schnee's last visible public post on his Meta Platforms, Inc. Facebook profile was on December 25th, 2023.

7. Schnee's Meta Platforms, Inc. website is https://www.facebook.com/profile.php?id=61554399878531  under the vanity name of "Cole Schnee" and assigned user ID 61554399878531.  Law enforcement knows this Meta Platforms, Inc. Facebook page to belong to Schnee based upon a photograph openly displayed on the profile

page that appears to be Schnee. The "current city" of Minot, ND matches known addresses in Minot, ND. On July 26th, 2024, Tammy Schnee, mother of SCHNEE, and Kayla Bauer, ex-girlfriend of SCHNEE, both confirmed to Deputy United States Marshal (DUSM) Kinney on phone interviews that SCHNEE is using Facebook audio through this profile to contact them. Both parties confirmed this is the correct profile by describing the photo listed as the profile photo. The last contact through Facebook audio between SCHNEE and Tammy SCHNEE was on June 21st, 2024 and the last contact with SCHNEE and Kayla BAUER through Facebook audio was on July 26th, 2024. Bauer stated to DUSM Kinney that each time she speaks with SCHNEE, he explains that he will have a shootout with police if encountered. Several other profiles that are believed to belong to Schnee were discovered, all using various vanity names and all containing pictures of Schnee with this "Cole Schnee" profile being the most recently used.

8. Meta Platforms, Inc. owns and operates a free-access social networking website that can be accessed at http://www.facebook.com. Meta Platforms, Inc. allows its users to establish accounts with Meta Platforms, Inc., and users can then use their accounts to share written news, photographs, videos, and other information with other Meta Platforms, Inc. users, and sometimes with the general public.

9. Meta Platforms, Inc. asks users to provide basic contact and personal identifying information to Meta Platforms, Inc., either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Meta Platforms, Inc. passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Meta Platforms, Inc. also assigns a user identification number to each account.

10. Meta Platforms, Inc. users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Meta Platforms, Inc. assigns a group identification number to each group. A Meta Platforms, Inc. user can also connect directly with individual Meta Platforms, Inc. users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Meta Platforms, Inc. and can exchange communications or view information about each other. Each Meta Platforms, Inc. user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

11. Meta Platforms, Inc. users can select different levels of privacy for the communications and information associated with their Meta Platforms, Inc. accounts. By adjusting these privacy settings, a Meta Platforms, Inc. user can make information available only to himself or herself, to particular Meta Platforms, Inc. users, or to anyone with access to the Internet, including people who are not Meta Platforms, Inc. users. A Meta Platforms, Inc. user can also create "lists" of Meta Platforms, Inc. friends to facilitate the application of these privacy settings. Meta Platforms, Inc. accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Meta Platforms, Inc..

12. Meta Platforms, Inc. users can create profiles that include photographs, lists of personal interests, and other information. Meta Platforms, Inc. users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Meta Platforms, Inc. users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Meta Platforms, Inc. users can "check in" to particular

locations or add their geographic locations to their Meta Platforms, Inc. posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

13. Meta Platforms, Inc. allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Meta Platforms, Inc. users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Meta Platforms, Inc.'s purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

14. Meta Platforms, Inc. users can exchange private messages on Meta Platforms, Inc. with other users. Those messages are stored by Meta Platforms, Inc. unless deleted by the user. Meta Platforms, Inc. users can also post comments on the Meta Platforms, Inc. profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Meta Platforms, Inc. has a chat feature that allows users to send and receive instant messages through Meta Platforms, Inc. Messenger. These chat communications are stored in the chat history for the account. Meta Platforms, Inc. also has Video and Voice Calling features, and although Meta Platforms, Inc. does not record the calls themselves, it does keep records of the date of each call.

15. If a Meta Platforms, Inc. user does not want to interact with another user on Meta Platforms, Inc., the first user can "block" the second user from seeing his or her account.

16. Meta Platforms, Inc. has a "like" feature that allows users to give positive feedback or connect to particular pages. Meta Platforms, Inc. users can "like" Meta Platforms, Inc. posts or updates, as well as webpages or content on third-party (*i.e.*, non-Meta Platforms, Inc.) websites. Meta Platforms, Inc. users can also become "fans" of particular Meta Platforms, Inc. pages.

17. Meta Platforms, Inc. has a search function that enables its users to search Meta Platforms, Inc. for keywords, usernames, or pages, among other things.

18. Each Meta Platforms, Inc. account has an activity log, which is a list of the user's posts and other Meta Platforms, Inc. activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Meta Platforms, Inc. page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Meta Platforms, Inc. page.

19. Meta Platforms, Inc. also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

20. In addition to the applications described above, Meta Platforms, Inc. also provides its users with access to thousands of other applications ("apps") on the Meta Platforms, Inc. platform. When a Meta Platforms, Inc. user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

21. Meta Platforms, Inc. also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Meta Platforms, Inc., including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Meta Platforms, Inc. profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.

22. Social networking providers like Meta Platforms, Inc. typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Meta Platforms, Inc. users may communicate directly with Meta Platforms, Inc. about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta Platforms, Inc. typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

23. As explained herein, information stored in connection with a Meta Platforms, Inc. account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Meta Platforms, Inc. user's IP log, stored electronic communications, and other data retained by Meta Platforms, Inc., can indicate who has used or controlled the Meta Platforms, Inc. account. This "user attribution" evidence is analogous to the search for "indicia

of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Meta Platforms, Inc. account at a relevant time. Further, Meta Platforms, Inc. account activity can show how and when the account was accessed or used. For example, as described herein, Meta Platforms, Inc. logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Meta Platforms, Inc. access, use, and events relating to the crime under investigation. Additionally, Meta Platforms, Inc. builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Meta Platforms, Inc. "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Meta Platforms, Inc. account owner. Last, Meta Platforms, Inc. account activity may provide relevant insight into the Meta Platforms, Inc. account owner's state of mind as it relates to the offense under investigation. For example, information on the Meta Platforms, Inc. account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

24.     Therefore, the computers of Meta Platforms, Inc. are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Meta Platforms, Inc., such as account access information, transaction information, and other account information.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

25.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), and Rule 41, F.R.Crim.P., by using the warrant to require Meta Platforms, Inc. to disclose to the government copies of the records and other information particularly described in Attachment B.  Upon receipt of the information described in Attachment B, government-authorized persons will review that information to locate the items described in Attachment B.

**CONCLUSION**

26.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Meta Platforms, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

27.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).].  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

**REQUEST FOR SEALING**

28.   I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until January 31st, 2025, or such other date as set by the court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*Thomas Kinney*
Thomas A Kinney
DEPUTY U.S. MARSHAL

Subscribed and sworn to before me on July 31st, 2024.

*Clare Hochhalter*
CLARE R. HOCHHALTER
UNITED STATES MAGISTRATE JUDGE